# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**SECURITIES AND EXCHANGE COMMISSION,**

                        **Plaintiff,**

        **vs.**

**ASHRAF MUFAREH AND ONPASSIVE LLC a/k/a Gofounders and Ofounders,**

                        **Defendants, and**

**ASMAHAN MUFAREH**

                        **Relief Defendant.**

**Case No. 6:23-cv-01539-PGB-RMN**

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION.........................................................................- 1 -

II.    BACKGROUND..........................................................................- 2 -

III.    LEGAL PRINCIPLES ...............................................................- 3 -

IV.    ARGUMENT ...............................................................................- 5 -

   A. The AC is Not a Shotgun Pleading ...........................................- 5 -

   B. Statements About ONPASSIVE's Legality are Actionable.......- 7 -

   C. Statements About the Timing of Product Launch are Actionable- 8 -

   D. Statements About Income Opportunities are Actionable.........- 10 -

   E. The AC Alleges a Scheme to Defraud ....................................- 13 -

   F.  The AC Adequately Pleads Scienter .......................................- 15 -

   G. The AC States Properly States a Claim Against the Relief
       Defendant ...............................................................................- 17 -

   H. There is No Basis for Dismissal With Prejudice.....................- 19 -

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*American United Life Ins. Co. v. Martinez*,
  480 F.3d 1043 (11th Cir 2007)...................................................................3

*Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty. Coll.*,
  77 F.3d 364 (11th Cir. 1996) .....................................................................5

*Anderson v. Transglobe Energy Corp.*,
  35 F. Supp. 2d 1363 (M.D. Fla. 1999)......................................................5

*Bamert v. Pulte Home Corp.*,
  2012 WL 3292397 (M.D. Fla. June 11, 2012)........................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................4

*Bryant v. Dupree*,
  252 F.3d 1161 (11th Cir. 2001)...............................................................20

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019)...............................................................10

*Concordia Pharms. Inc. v. Winder Lab'ys, LLC*,
  No. 2:16:-CV-004-RWS, 2018 WL 11351131 (N.D. Ga. Sept. 28, 2018) ..........8

*Eiber Radiology, Inc. v. Toshiba Am. Med. Sys. Inc.*,
  673 F. Appx. 925 (11th Cir. 2016)..........................................................20

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976)..................................................................................15

*Foman v. Davis*,
  371 U.S. 178 (1962)............................................................................. 19, 20

*FTC v. Noland*,
  No. CV-20-00047-PHX-DWL, 2023 WL 3372517 (D. Ariz. May 11, 2023)...12

*Hekker v. Ideon Grp., Inc.*,
  No. 95-681-Civ-J-16, 1996 WL 578335 (M.D. Fla. Aug. 19, 1996) ..................5

*Holland v. Abbott Lab'y, Inc*.,
  626 F.Supp.3d 1256 (M.D. Fla. 2022)................................................................4

*In re BHP Billiton Ltd. Sec. Litig*.,
  276 F.Supp.3d 65 (S.D.N.Y. 2017) ..................................................................10

*In re Spiegel, Inc. Sec. Litig.*,
  382 F.Supp.2d 989 (N.D. Ill. 2004) ........................................................... 10, 12

*In re The Bennett Funding Grp., Inc.*,
  439 F.3d 155 (2nd Cir. 2006) ............................................................................14

*In the Matter of Southeast Banking Corp.*,
  69 F.3d 1539 (11th Cir. 1995)..............................................................................3

*Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*,
  No. CIV. 04-4213JRTAJB, 2007 WL 2893374 (D. Minn. Sept. 28, 2007).........7

*Jackson v. Birmingham Bd. Of Educ.*,
  309 F.3d 1333 (11th Cir. 2002)............................................................................4

*Knight v. E.F. Hutton & Co.*,
  750 F. Supp. 1109 (M.D. Fla. 1990)......................................................................4

*McDonald v. Alan Bush Brokerage Co.*,
  863 F.2d 809 (11th Cir. 1989)............................................................................17

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)......................................................................................8, 9

*SEC v. Carriba Air, Inc.*,
  681 F.2d 1318 (11th Cir. 1982)..........................................................................16

*SEC v. Complete Bus. Sols. Grp., Inc.*,
  538 F. Supp. 3d 1309 (S.D. Fla. 2021) ...............................................................19

iv

*SEC v. Dalius*,
  No.: CV 18-08497-CJC(Ex), 2019 WL 13178869 (C.D. Cal. Sept. 12, 2009)..11

*SEC v. Founding Partners Cap. Mgmt.*,
  639 F. Supp. 2d 1291 (M.D. Fla. 2009)..............................................................17

*SEC v. Mannion*,
  789 F. Supp. 2d 1321 (N.D. Ga. 2011)..............................................................16

*SEC v. Manor Nursing Centers, Inc.*,
  458 F.2d 1082 (2nd Cir. 1972)..........................................................................16

*SEC v. Monterosso*,
  756 F.3d 1326 (11th Cir. 2014)..........................................................................16

*SEC v. Platforms Wireless Int'l Corp.*,
  559 F. Supp. 2d 1091 (S.D. Cal. 2008)..............................................................16

*SEC v. RBF Trust, LLC*,
  No. 22-61831-CIV-SINGHAL, 2023 WL 5300185 (M.D. Fla. May 31, 2023)..5

*SEC v. Roanoke Technology Corp.*,
  2006 WL 3813755 (M.D. Fla. Dec. 26, 2006)....................................................13

*SEC v. Taronis Tech., Inc.*,
  No. 8-22-cv-1939, 2023 WL 5625299 (M.D. Fla. Aug. 31, 2023) .................. 4-5

*SEC v. Willis*,
  No. 1:22-cv-02744-GPG-SKC (D. Colo. Sept. 29, 2023)....................................8

*SEC v. World Cap. Mkt., Inc.*,
  2014 WL 12561076 (C.D. Cal. July 10, 2014)....................................................19

*Sheldon v. Vermont*,
  246 F.3d 682 (10th Cir. 2000)..............................................................................8

*St. Clair Cnty. Emp. Ret. Sys. v. Acadia Healthcare Co., Inc.*,
  No. 3:18-cv-00988, 2021 WL 195370 (M.D. Tenn. Jan. 20, 2021)............ 11, 12

*Terry v. Interim Healthcare Gulf Coast, Inc.*,
　　2018 WL 1992276 (M.D. Fla. Apr. 27, 2018)......................................................6

*United States v. Gold Unlimited, Inc.*,
　　177 F.3d 472 (6th Cir. 1999)...............................................................15

*Ventrassist Pty. Ltd. v. Heartware, Inc.*,
　　377 F. Supp. 2d 1278 (S.D. Fla. 2005) .................................................4

*Webster v. Omnitrition Int'l, Inc.*,
　　79 F.3d 776 (9th Cir. 1996)...............................................................15

## Other Authorities

Black's Law Dictionary .........................................................................15

## Rules

Fed. R. Civ. P. 15(a)(1).........................................................................20

Fed. R. Civ. P. 15(a)(2).........................................................................19

Fed. R. Civ. P. 9(b) .........................................................................4, 16

## I.    INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this Memorandum in Opposition to Defendants' Motion to Dismiss the Amended Complaint (the "MTD") [Dkt No. 32].

The MTD raises several arguments each of which lack merit.  First, the Amended Complaint [Dkt No. 26] ("AC") is not an example of shotgun pleading. In fact, each count is alleged separately and the appropriate facts are properly incorporated within each count.  Second, the Defendants' statements about the legality and legitimacy of OnPassive as well as the timing of their products' launch are actionable.  The Defendants' attempts to couch these statements as mere opinions wholly fail.  Third, the MTD attempts to frame the Defendants' statements about income opportunity as "mere puffery," but the context of these statements renders them actionable.  Fourth, the MTD claims the SEC scheme claims are conclusory, which is simply false given the substantial amount of facts pleaded within the AC.  Lastly, the MTD claims the AC fails to state a claim for unjust enrichment as to the Relief Defendant.  That argument fails as the AC clearly meets the bar for properly naming a Relief Defendant in this action.  The Court should deny the MTD in its entirety.

## II.    BACKGROUND

The AC alleges that from July 2018 to the present, Defendants Ashraf Mufareh ("Mufareh") and ONPASSIVE LLC ("ONPASSIVE") (collectively "Defendants") engaged in a fraudulent and unregistered offering of securities that included the operation of an illegal pyramid scheme.  (AC at ¶¶ 1-2.)  The AC successfully states causes of action against: (1) Defendants for unregistered offers and sales of securities (Claim One) and securities fraud (Claims Two and Three; (2) Mufareh for control person liability for certain of ONPASSIVE's violations (Claim Four); and (4) Relief Defendant Asmahan Mufareh for unjust enrichment (Claim Five).

The Defendants claimed to be developing an "ecosystem" of dozens of computer applications using artificial intelligence that would seamlessly interface with one another.  (AC at ¶¶ 2-5, 24, 29, 42, 49, 76, 78.)  By March 2023, over 800,000 investors (referred to as "Founders") had each paid at least $97 to the Defendants, cumulatively totaling over $108 million (*id.* at ¶¶ 14, 96), as an initial step to obtaining a position for receiving income (*id.* at ¶ 35).  Defendants stated that Founders would receive as commissions portions of monthly subscription fees paid by those placed after them in the pyramid structure.  (*Id.* at ¶¶ 3-4, 29, 33, 37, 44-45, 54.)  In reality, the business was an illegal pyramid scheme in which any purported return on investment would come not from the sale of any software

product to bona fide retail customers but instead chiefly from the recruitment of other investors.  (*Id*. at ¶¶ 33-53.)

The Defendants made repeated false representations to potential investors about: the timing of the ecosystem's launch and the commencement of commission payments (AC at ¶¶ 73-80); the magnitude of the passive or "residual" investment returns, *e.g.*, more than $2 million per month "for life" based on unrealistic assumptions about the functioning of the illegal pyramid structure (*id*. at ¶¶ 54-67); and the legality of Defendants' business operations (*id*. at ¶¶ 69-72).  Additionally, the Defendants authorized the creation of counterfeit websites and the posting of fake "independent" positive reviews of OnPassive on the sites.  (*Id*. at ¶¶ 81-90.)

By June 30, 2023, nearly five years after inception, the Defendants had neither launched a single commercial product for sale nor paid any commission to investors.  (AC at ¶¶ 16, 29, 37 and 78.)

## III.    LEGAL PRINCIPLES

The "threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low."  *In the Matter of Southeast Banking Corp.*, 69 F.3d 1539 (11th Cir. 1995).  The Court must accept as true all facts alleged in the complaint in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir 2007). All reasonable inferences must be drawn in the plaintiff's favor.  *Ventrassist Pty.*

*Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1285 (S.D. Fla. 2005) (citing

*Jackson v. Birmingham Bd. Of Educ.*, 309 F.3d 1333, 1335 (11th Cir. 2002)).  The

Court's review is limited to the four corners of the complaint, *Holland v. Abbott*

*Lab'y, Inc*., 626 F.Supp.3d 1256, 1260 (M.D. Fla. 2022), and should concern only

the complaint's legal sufficiency.  *SEC v. Taronis Tech., Inc*., No. 8-22-cv-1939,

2023 WL 5625299, at *2 (M.D. Fla. Aug. 31, 2023).[1]

A complaint must contain a short and plain statement of the claim showing

that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  "While Rule 8(a) does

not demand 'detailed factual allegations,' the plaintiff must plead 'enough facts to

state a claim to relief that is plausible on its face.'" *Taronis Tech., Inc*., 2023 WL

5625299, at *2 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Where fraud is alleged, "a party must state with particularity the

circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other

conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Pleading fraud with particularity does not require pleading detailed evidentiary

matter, *Knight v. E.F. Hutton & Co.*, 750 F. Supp. 1109, 1115 (M.D. Fla. 1990),

---

[1] Extrinsic evidence appended to a motion to dismiss may be considered when it is "central to the complaint" and "provided that its contents are not in dispute."  *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).  Here, the Court should not consider disputed facts not alleged in the AC but impermissibly raised in the MTD, *e.g.*, that "Mr. and Mrs. Mufareh founded OnPassive in 2018 to develop a marketing tool for online businesses, and that OnPassive later pivoted to creating a suite of software products that includes an email service, video conferencing, and social networking."  (MTD at 1 and 4.)

but only a reasonable delineation of the underlying acts and transactions constituting the fraud, *Anderson v. Transglobe Energy Corp.*, 35 F. Supp. 2d 1363, 1369-70 (M.D. Fla. 1999).  A complaint pleads fraud with particularity if it alleges the substance of the fraudulent acts, who engaged in the fraud, and when the fraud occurred.  *Hekker v. Ideon Grp., Inc.*, No. 95-681-Civ-J-16, 1996 WL 578335, at *4 (M.D. Fla. Aug. 19, 1996); *Taronis Tech., Inc.*, 2023 WL 5625299, at *2.

## IV.    ARGUMENT

### A.    <u>The AC is Not a Shotgun Pleading</u>

The MTD incorrectly argues that the AC should be dismissed as an impermissible "shotgun pleading."  (MTD at 7-9.)  "A shotgun pleading is a pleading in which 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief' and the defendant therefore cannot be 'expected to frame a responsive pleading.'"  *Taronis Tech., Inc.*, 2023 WL 5625299, at *3 (quoting *Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

The AC "is not a shotgun pleading."  Each count is alleged separately and the facts supporting each count are clearly alleged.  A complaint does not violate the prohibition against shotgun pleadings merely because every count adopts and re-alleges the same facts."  *SEC v. RBF Trust, LLC*, No. 22-61831-CIV-SINGHAL, 2023 WL 5300185, at *2 (M.D. Fla. May 31, 2023); *see also Terry v.*

- 5 -

*Interim Healthcare Gulf Coast, Inc.*, 2018 WL 1992276, at *2 (M.D. Fla. Apr. 27, 2018) (complaint that re-alleges factual allegations but does not re-allege each individual count is not a shotgun pleading). Including the same factual allegations in multiple claims is proper here due to the scope of the fraudulent scheme.

Defendants argue that the entire AC should be dismissed because Claims Two and Three (at AC ¶¶ 106(b) and 109(b)) specifically reference paragraphs 60 and 63 of the AC as misstatements/omissions but AC ¶¶ 106(b) and 109(b) do not also specifically reference paragraphs 59, 61, and 62 of the AC. The Defendants claim to be confused by this as paragraphs 59-63 all reference false statements made by the Defendants regarding future income that investors could receive. Defendants claim to be unable to determine which of those facts are alleged to be misstatements/omissions under Claims Two and Three. (MTD at 8-9.)

This argument is baseless because AC ¶¶ 106(b) and 109(b) each reference paragraphs 64 and 68 of the AC, both of which specifically incorporate paragraphs 59 through 63. Claims Two and Three generally reallege the allegations in paragraphs 59 through 63 of the AC as well. (AC at ¶¶ 105, 108). Defendants therefore have more than sufficient notice that the factual allegations in paragraphs 59 through 63 of the AC will be used to demonstrate that Defendants made misstatements/omissions as alleged in Claims Two and Three.

### B.    Statements About ONPASSIVE's Legality are Actionable

Defendants incorrectly argue that their statements that ONPASSIVE was legal are not actionable because they were "opinions."  (MTD at 10-12.)  To the contrary, the AC clearly alleges that these false statements were made as facts concurrently with Defendants': (a) operation of an illegal pyramid scheme; and (b) use of counterfeit websites to mimic the names and appearances of legitimate multi-level-marketing review websites in order to counter assertions on the legitimate websites that ONPASSIVE was "a pyramid scheme launched by a serial scammer."  (AC at ¶ 82.a.)

For example, a November 30, 2019, post to one of Defendants' counterfeit websites included this statement about ONPASSIVE: "it's a scam-free, fully legit and compliant and has a global presence in more than 100+ countries."  (*Id*. at ¶ 84.f.)  Defendants' use of counterfeit websites to ascribe statements of legality to seemingly objective third parties not only indicates Defendants' scienter as to falsity of those statements, but also reflects Defendants' belief that such statements had objective factual value to investors.  *See Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, No. CIV. 04-4213JRTAJB, 2007 WL 2893374, at *4 (D. Minn. Sept. 28, 2007) (noting that, with respect to statements concerning the legality of conduct, distinguishing fact from opinion "involves a consideration of not only the words themselves but also the context in which the statements were made"); *see*

*also Concordia Pharms. Inc. v. Winder Lab'ys, LLC*, No. 2:16:-CV-004-RWS, 2018 WL 11351131, at *8 (N.D. Ga. Sept. 28, 2018) (holding that "statements regarding the legality of Defendants' products are not mere opinions but rather discernable statements of fact").

Even if Defendants' statements were opinions, they are nonetheless actionable because, as alleged in the AC, Defendants were knowingly or recklessly operating an illegal pyramid scheme.  (AC at ¶ 67.)  Defendants failed to disclose to investors that Defendants authorized the creation of the counterfeit websites and the posting of internally-generated positive reviews to the sites, including about ONPASSIVE's legitimacy.  (AC at ¶ 85.)  Those material omissions make the statements misleading to a reasonable investor.  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015).

## C.   <u>Statements About the Timing of Product Launch are Actionable</u>

The allegations regarding feasibility and timing of ONPASSIVE's purported product launch (AC ¶¶ 73.a.-h.) were, like the false statements discussed above, "patently false statements of present fact," and, therefore actionable.  *See Sheldon v. Vermont*, 246 F.3d 682, at *5 (10th Cir. 2000); *SEC v. Willis*, No. 1:22-cv-02744-GPG-SKC, at ECF No. 42, at 13-14 (D. Colo. Sept. 29, 2023) (finding that certain statements by defendant about the timing of product launch were false and

misleading because defendant's company had not finished developing any products and had never received orders or commitments from any retailer for products).

The timing/feasibility statements were false when made because Defendants did not have the personnel to develop the applications along the projected timelines (AC at ¶¶ 73.a. and b., 75). To the extent Defendants hired personnel and expended resources, at least up through August 2020, it was chiefly to develop ONPASSIVE's Back Office website used for recruiting new investors, tracking placement in the pyramid structure, and marketing the ONPASSIVE income opportunity. (AC at ¶ 74.) As of August 2020, development of most of the purported 30 applications that were to comprise the ecosystem had not commenced. (*Id*. at ¶ 76.) Defendants' statements about ONPASSIVE's purported product launch were designed to lull investors into incorrectly believing that a real product launch would occur. (*Id*. at ¶ 77.)

Defendants are also wrong that the false statements alleged at AC ¶¶ 73.a., f., g. and h. were mere opinions. Any supposed belief that may have led Mufareh to communicate that ONPASSIVE's purported product launch would occur soon did not fairly align with the information in his possession at the time. Accordingly, his words—whether opinion or not—provide the foundation for liability under the securities laws. *Omnicare*, 575 U.S. at 189.

### D.    <u>Statements About Income Opportunities are Actionable</u>

Defendants are wrong to argue that their statements about how much investors would receive in commissions (AC ¶¶ 59–63) were mere puffery, and not actionable (MTD at 16-17).

Courts must exercise great caution when deciding whether a statement is puffery at the MTD stage. *See In re Spiegel, Inc. Sec. Litig.*, 382 F.Supp.2d 989, 1028 (N.D. Ill. 2004) (declining to hold that statements were puffery at the motion to dismiss stage because materiality involves "delicate assessments of the inferences a reasonable shareholder would draw"); *see also Carvelli v. Ocwen Fin. Corp*., 934 F.3d 1307, 1320 (11th Cir. 2019) (holding that a court should not dismiss a complaint "unless the alleged misrepresentations—puffery or otherwise—are 'so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'"). Moreover, whether a statement is mere puffery depends, in part, on the context in which it is made, and while certain statements in isolation may be mere puffery, when the statements are repeated to reassure investors about particularly important matters, those statements may become material to investors. *In re BHP Billiton Ltd. Sec. Litig*., 276 F.Supp.3d 65, 79 (S.D.N.Y. 2017) (internal citations and quotations omitted). Here, the key is whether the statement at issue can be proven or disproven using standard tools of evidence. Opinion or puffery in particular contexts when it is

both factual and material may be actionable. *St. Clair Cnty. Emp. Ret. Sys. v. Acadia Healthcare Co., Inc*., No. 3:18-cv-00988, 2021 WL 195370, at *6 (M.D. Tenn. Jan. 20, 2021). Thus, the Defendants' statements are actionable.

The AC alleges that Defendants repeatedly made statements about wholly unrealistic specified potential income investors could commence receiving within wholly unrealistic specified time periods (AC at ¶¶ 60-63). At all times, Mufareh knew the stage of product development and that ONPASSIVE did not have the personnel to develop the applications along the projected timelines (*id*. at ¶ 74). As of August 2020, development of most of the purported 30 applications that were to comprise the ecosystem had not commenced (*id*. at ¶ 76); in November 2022, ONPASSIVE rolled out free applications rather than for commercial sale (*id*. at ¶ 78); as of June 30, 2023, the commercial offering of any purported product had yet to occur (*id*.); and Defendants were operating counterfeit websites on which they authorized the posting of fake reviews that ONPASSIVE was "legit" (*id*. at ¶ 84). Any representation about potential income under these circumstances was objectively false and actionable in the context of the material omissions. *SEC v. Dalius*, No.: CV 18-08497-CJC(Ex), 2019 WL 13178869, at *9 (C.D. Cal. Sept. 12, 2009) (finding that even if statements are "forward-looking," in context, they plainly implied that the company had begun to monetize consumer data, yet

defendant knew that his company never had the means to process data and never made any serious efforts to earn revenue in this way).

Defendants' income opportunity statements could be objectively measured and verified using standard tools of evidence, as illustrated in the AC in relation to the "payment grid" publicized to potential investors (AC at ¶ 60) and the specific income figures Mufareh reviewed and approved as "realistic," "conservative," and "worst case" (AC at ¶ 63). *St. Clair Cnty. Emp. Ret. Sys.*, 2021 WL 195370, at \*6. Defendants' false statements were not wiped clean by use of a disclaimer displayed at the bottom of the payment grid (MTD at 17). *See, e.g., FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2023 WL 3372517, at \*45 (D. Ariz. May 11, 2023) (concluding that "the net impression . . . that affiliates could reasonably expect to earn substantial, if not life-changing, amounts of money" was "unaffected by Defendants' use of purported 'disclaimers,'"); *In re Spiegel, Inc. Sec. Litig.*, 382 F.Supp.2d 989, 1029 (N.D.Ill. 2004) ("Given the allegations that Defendants knowingly omitted material information, the general disclaimers are not enough to save them from potential liability at [the motion to dismiss] stage of the proceedings."). The disclaimer's language was itself false in suggesting that it was "possible" to earn upwards of "$2,032,614 per month for life." (AC at ¶ 60.)

### E.    The AC Alleges a Scheme to Defraud

The MTD incorrectly argues that the claims for relief based on fraud (Claims Two and Three) fail to adequately allege a scheme to defraud.[2]  (MTD at 18-20.)  The MTD posits that the only factual allegation in support of a scheme to defraud is a "conclusory allegation" that ONPASSIVE is a pyramid scheme, and it argues that such an allegation fails to satisfy the heightened pleading requirement of Rule 9(b).  (*Id*.)  These arguments are baseless.

Securities Act §§ 17(a)(1) and (a)(3) prohibit any person from, in the offer or sale of a security, employing "any device, scheme, or artifice to defraud" or engaging in any "transaction, practice, or course of business" which operates or would operate as a fraud or deceit upon a purchaser.  Similarly, Exchange Act §10(b) and Rules 10b-5(a) and (c) thereunder prohibit any person from employing "any device, scheme, or artifice to defraud" or engaging in any "act, practice, or course of business" which operates or would operate as a fraud or deceit on any person, in connection with the purchase or sale of a security.  *See, e.g.*, *SEC v. Roanoke Technology Corp.*, 2006 WL 3813755, at *2-3 (M.D. Fla. Dec. 26, 2006).

The AC alleges scores of facts showing that Defendants engaged in a scheme to defraud.  (AC ¶¶ 1-17, 24-29, and 33-99).  The allegations include that:

---

[2] The MTD concedes (at 9) that the AC need not plead both a scheme to defraud and material misrepresentations in order to survive a motion to dismiss; either theory of liability would be sufficient under the fraud provisions of the Securities Act and the Exchange Act.

(a) Defendants offered unregistered securities in connection with an illegal pyramid scheme; (b) in furtherance of the scheme Defendants repeatedly made materially false and misleading statements and omissions to potential investors (*see* pp. 2-3 and 7-12, *supra*); and (c) Defendants created counterfeit review websites and directed the posting on them of internally generated positive reviews that were falsely passed off as objective, third-party reviews (*see* pp. 3, 7-8, *supra*). (AC at ¶¶ 1, 11, 12, 33-90.)  The false statements and counterfeit review websites are addressed above.

The AC alleges that ONPASSIVE is a pyramid scheme because it sells investors an opportunity to make money not through the sale of a product but rather in return for recruiting other investors, who are likewise incentivized to recruit others in an unending and unsustainable chain of recruitment.  (AC at 33-67.)  The AC sets forth dozens of allegations specifically describing the nature of the illegal pyramid scheme, including the components of the illegal business arrangement (AC at ¶¶ 33-53) and how it was promoted to potential investors (*id*. at ¶¶ 54-64).[3]  The conduct alleged is inherently deceptive.  *See, e.g., In re The Bennett Funding Grp., Inc.*, 439 F.3d 155, 157 n.2 (2nd Cir. 2006) ("A 'Ponzi' or

---

[3] The MTD (at 19-20) mistakenly conflates allegations about (a) the manner in which Defendants marketed the ONPASSIVE investment to potential investors (in some instances by telling potential investors that they would receive a portion of monthly subscription fees paid by downstream customers (*see* AC at ¶ 25) with (b) the functioning of the business organization as a pyramid scheme, in which investors would receive income primarily in return for recruiting other investors (*see* AC at ¶¶ 33-67).

'Pyramid' Scheme is a fraudulent investment scheme . . ." (*citing* Black's Law Dictionary); *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 781 (9th Cir. 1996) (discussing why pyramid schemes are "inherently fraudulent" and stating that "[o]peration of a pyramid scheme constitutes fraud for purposes of [the securities laws]"); *United States v. Gold Unlimited, Inc.*, 177 F.3d 472. 484 (6th Cir. 1999) ("Unquestionably, an illegal pyramid scheme constitutes a scheme to defraud.") Thus, contrary to the MTD, the AC alleges facts supporting that Defendants engaged in precisely the sort of inherently deceptive pyramid scheme that courts have determined constitutes a scheme to defraud. The fraudulent scheme alleged also encompasses the materials misrepresentations and omissions and counterfeit websites set forth above.

## F.    **The AC Adequately Pleads Scienter**

The MTD incorrectly argues that the AC fails to adequately allege the scienter required for violations of Section 17(a)(1) of the Securities Act and Section 10(b) (and the Rule 10b-5 promulgated thereunder) of the Exchange Act, and that Claims Two and Three should therefore be dismissed. (MTD at 20-23.)[4]

Scienter is "a mental state embracing intent to deceive, manipulate or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976), and it can be

---

[4] Claim Two alleges violations of §§ 17(a)(1)-(a)(3) of the Securities Act. (AC at ¶¶ 105-107). Scienter is not an element of §§ 17(a)(2) and 17(a)(3). *See Aaron v. SEC*, 446 U.S. 680, 695 (1980). Thus, the MTD's scienter arguments are inapplicable to Claim Two.

established by a showing of knowing misconduct or severe recklessness, *SEC v.
Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir. 1982).  Scienter can be
"established through circumstantial or direct evidence."  *SEC v. Monterosso*, 756
F.3d 1326, 1335 (11th Cir. 2014).  "The scienter of a corporation can be imputed
from that of its officers."  *SEC v. Platforms Wireless Int'l Corp.*, 559 F. Supp. 2d
1091, 1096 (S.D. Cal. 2008), *citing SEC v. Manor Nursing Centers, Inc.*, 458 F.2d
1082, 1089 n.3 (2nd Cir. 1972).  Scienter may be alleged generally as opposed to
with particularity.  Fed. R. Civ. P. 9(b); *Bamert v. Pulte Home Corp.*, 2012 WL
3292397, at *7 (M.D. Fla. June 11, 2012).

The AC adequately "alleges plausible facts either directly showing or
otherwise supporting the reasonable inference that Defendants acted with scienter."
*SEC v. Mannion*, 789 F. Supp. 2d 1321, 1334 (N.D. Ga. 2011).  The allegations
include that Defendants knowingly or recklessly made false statements about and
were aware of: the timing of product launch while being aware of facts inconsistent
with that timing (AC at ¶¶ 73-80); the magnitude of unrealistic potential
investment returns (*id.* at ¶¶ 60-64); and the legality of the business organization
(*id.* at ¶¶ 69-72).  The allegations also include that the Defendants authorized the
creation of counterfeit websites and the posting of fake reviews of ONPASSIVE
on those sites (*id.* at ¶¶ 81-90).  Thus, Defendants argue incorrectly that the AC
"provides no facts" and relies on "conclusory allegations" (MTD at 22) to

demonstrate scienter.  To the contrary, the allegations clearly demonstrate knowing misconduct or, at a minimum, severe recklessness.  *See, e.g.*, *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11ᵗʰ Cir. 1989) (severe recklessness includes "highly unreasonable omissions or misrepresentations" that are known to the defendant or so obvious that the defendant must have been aware).

### G.    The AC States Properly States a Claim Against the Relief Defendant

The MTD mistakenly argues that the Fifth Claim for Relief in the AC should be dismissed because it fails to state a claim for unjust enrichment against Relief Defendant Asmahan Mufareh ("Asmahan").  (MTD at 23-25.)

"A relief defendant is not accused of wrongdoing, but a federal court may order equitable relief against such a person where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds."  *SEC v. Founding Ptnrs. Capital Mgmt.*, 639 F. Supp. 2d 1291, 1293 (M.D. Fla. 2009).

The AC adequately alleges that Asmahan had no legitimate claim to the funds she received.  The allegations on this point include that : (a) Asmahan was a co-founder and co-owner of ONPASSIVE, but her husband Mufareh wholly controlled all operations of ONPASSIVE and had ultimate authority over its activities (AC at ¶¶ 21, 23); (b) ONPASSIVE received over $108 million from investors, all of which constituted illicit proceeds, (*id*. at ¶¶ 14, 92, 96); (c) Mufareh transferred illicitly obtained investor funds to accounts controlled by

Asmahan (*id*. at ¶¶ 17, 23, 97, 98, 99); (d) Asmahan (and her husband) used the funds for personal expenses including the purchase of upscale dining, jewelry, luxury items and services, and stocks (*id*. at ¶¶ 17, 98); and (e) Asmahan "gave no consideration" in exchange for the funds she received and has no legitimate claim to those funds (*id*. at ¶¶ 23, 99, 116).  These allegations are more than sufficient to state a plausible claim for unjust enrichment against Asmahan Mufareh.[5]

The MTD argues without factual support that the funds received by Asmahan were akin to a salary or a dividend to which she had a legitimate claim, and that she used the compensation to support her family.  (MTD at 24-25.)  But these contentions are contrary to the allegations in the AC (which must be accepted as true) that Asmahan Mufareh "gave no consideration" in exchange for the funds she received and has no legitimate claim to those funds.  In that sense, the facts here are totally different than *SEC v. Founding Partners Cap. Mgmt.*, 639 F. Supp. 2d 1291 (M.D. Fla. 2009), where the relief defendant obtained the illicit funds pursuant to a loan agreement that imposed on it rights and obligations with regards

---

[5] "[T]he SEC need not satisfy the heightened pleading standard of Federal Rule 9(b) for claims sounding in fraud to adequately allege a claim against . . . a Relief Defendant." *SEC v. Merrill*, 2021 WL 1117280, at *5 (D. Md. Mar. 23, 2021).  A Relief Defendant claim can be brought against a person who is not accused of wrongdoing at all, much less fraud. *Id*.; *see also SEC v. Complete Bus. Sols. Grp., Inc.*, 538 F. Supp. 3d 1309, 1342 (S.D. Fla. 2021) (referring to *Merrill* in support of the position that "it is not clear that Rule 9(b)'s heightened pleading standard applies to the SEC's allegations that The LME Trust is a relief defendant").  Even if Rule 9(b) applied, the AC sufficiently alleges that the proceeds used by Asmahan came from defrauded investors, and that she gave no consideration in exchange for the illicit funds.

to the loan proceeds.  639 F. Supp. 2d at 1291-1292.  In contrast to the debtor-creditor relationship that existed in *Founding Partners*, "[a] claim of ownership is not legitimate where the relief defendant holds the funds in trust for the primary violator, the ownership claim is a sham, the relief defendant acted as a mere conduit of proceeds from the underlying statutory violation, or some similar specious claim to ownership."  *SEC v. World Cap. Mkt., Inc.*, 2014 WL 12561076, at *2 (C.D. Cal. July 10, 2014), *cited by SEC v. Complete Bus. Sols. Grp., Inc.*, 538 F. Supp. 3d 1309, 1343 (S.D. Fla. 2021).

## H.    <u>There is No Basis for Dismissal With Prejudice</u>

The MTD incorrectly argues that any dismissal should be with prejudice to the SEC's ability to file an amended pleading because, according to the defendants, the SEC has already filed an AC and "should not be rewarded with a third bite at the apple."  (MTD at 25.)  This argument fails.

A district court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  If the Court determines that any claim should be dismissed, the SEC respectfully requests the Court grant leave to amend its pleading.  At most, the MTD raises purported curable pleading deficiencies, not irreparable flaws that cannot be resolved with an amended pleading.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  The MTD is wrong to suggest that an amended pleading would constitute an impermissible third bite at the apple.  The Federal

Rules of Civil Procedure allow a party to amend its pleading once as a matter of course (without leave of court) *see* Fed. R. Civ. P. 15(a)(1).  The Court has not ordered or suggested that the allegations in the original complaint were deficient in any manner, nor the SEC did not seek leave to amend.  There is consequently no basis to the defendants' suggestion that the SEC has repeatedly failed to cure purported pleading deficiencies.  *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (reversing dismissal with prejudice under similar circumstances).

This is not a situation where there has been "undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed."  *Dupree*, 252 F.3d at 1163.  Nor would any further amended pleading prejudice the defendants or be futile.  *Id.; see also Davis*, 371 U.S. at 182.  These facts and the procedural history are inapposite to *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys. Inc.*, 673 F. Appx. 925, 930 (11th Cir. 2016).

As argued above, the Court should deny the MTD in its entirety.

Respectfully submitted,

December 11, 2023                    By: */s/ Michael J. Friedman*
                                    Michael J. Friedman
                                    New York Bar # 4297461
                                    Assistant Chief Trial Counsel
                                    (202) 551-7977
                                    friedmanmi@sec.gov
                                    100 F Street, N.E.
                                    Washington, D.C.  20549

                                    *Attorney for Plaintiff*
                                    *Securities and Exchange Commission*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 11, 2023, Plaintiff Securities and

Exchange Commission's Memorandum in Opposition to Motion to Dismiss was

served upon counsel of record for Defendants via the Courts' ECF system.

                            /s/ *Michael J. Friedman*
                            Michael J. Friedman
                            Counsel for Plaintiff
                            U.S. Securities & Exchange
                            Commission